## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**WAYNE ALAN ROBERTSON,**

    **Plaintiff,**

**v.**                                      **Case No.: 3:20-cv-00538**

**KILOLO KIJAKAZI,**
**Acting Commissioner of the**
**Social Security Administration,**

    **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are Plaintiff's Motion for Judgment on the Pleadings and the Commissioner's Brief in Support of Defendant's Decision, requesting judgment in her favor. (ECF Nos. 20, 21, 22).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's request for judgment on the pleadings be **DENIED**; the Commissioner's request for judgment on the

pleadings be **GRANTED**; the Commissioner's decision be **AFFIRMED**; and this case be **DISMISSED** and removed from the docket of the Court.

## I.    Procedural History

In April 2018, Wayne Alan Robertson ("Claimant") protectively filed for DIB and SSI, alleging a disability onset date of February 14, 2018, due to "chronic COPD, asthma, obstructive sleep apnea, coronary artery disease, congestive heart failure, multiple heart attacks, triple bypass surgery, black lung, severe pancreatitis, ischemic bowel, emphysema, thoracic outlet syndrome, [right] rotator cuff surgery, bilateral hearing loss – aides, hyperlipidemia, degenerative joint disease left shoulder, osteoarthritis, Raynaud's disease, memory and concentration problems, depression, anxiety, hiatal hernia, hypertension, helicobacter pylori-associated gastritis, GERD, and pinguecula." (Tr. at 15, 318-35, 373). After his applications were denied at the initial and reconsideration levels of review, Claimant requested an administrative hearing, which was held before the Honorable Melinda Wells, Administrative Law Judge, ("the ALJ") on August 5, 2019. (Tr. at 33-61). By written decision dated October 4, 2019, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. at 12-32). The ALJ's decision became the final decision of the Commissioner on June 12, 2020, when the Appeals Council denied Claimant's request for review. (Tr. 1-6).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed an Answer opposing Claimant's Complaint and a Transcript of the Administrative Proceedings. (ECF Nos. 12, 13). Claimant filed a Motion for Judgment on the Pleadings and Memorandum in Support, and the Commissioner filed a Brief in Support of Defendant's Decision. (ECF Nos. 20, 21, 22). The time period within which Claimant could file a reply to the

Commissioner's response expired. Consequently, the matter is fully briefed and ready for resolution.

## II.    <u>Claimant's Background</u>

Claimant was 50 years old on his alleged onset date and 51 years old on the date of the ALJ's decision. (Tr. at 23). He communicates in English, earned a General Educational Diploma (GED), and previously worked as a mining surveyor. (Tr. at 87-88, 372, 374).

## III.    <u>Summary of ALJ's Decision</u>

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d),

416.920(d). If so, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* §§ 404.1520a(b), 416.920a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from

4

the impairment according to criteria specified in 20 C.F.R. §§ 404.1520a(c), 416.920a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* §§ 404.1520a(d), 416.920a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for disability insurance benefits through December 31, 2021. (Tr. at 17, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not

engaged in substantial gainful activity since February 14, 2018, the alleged disability onset date. (Tr. at 18, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: degenerative joint disease of the bilateral shoulders, chronic obstructive pulmonary disease (COPD), coronary artery disease, major depressive disorder, schizoaffective disorder, and generalized anxiety disorder. (*Id.*, Finding No. 3). The ALJ found that Claimant's sleep apnea was a non-severe impairment, and his back and neck pain, pancreatitis, hernia, carpal tunnel syndrome, tendonitis, irritable bowel syndrome, Raynaud's syndrome, trigger finger, and schizophrenia were non-medically determinable impairments. (Tr. at 18).

Under the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 18-20, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can frequently climb ramps and stairs, balance, kneel, and crouch; never climb ladder[s], ropes, or scaffolds; and occasionally stoop and crawl. He can frequently push and pull with the bilateral upper extremities; frequently handle and finger with the right hand; occasionally reach overhead and frequently reach in other directions with the bilateral upper extremities. He should avoid concentrated, that is no more than occasional, exposure to extreme cold, wetness, humidity, pulmonary irritants, and hazards of moving machinery and unprotected heights. He can perform simple, routine, repetitive tasks that do not involve production rates or strict time limits and require no interaction with the public.

(Tr. at 20-23, Finding No. 5).

At the fourth step, the ALJ determined that Claimant could not perform his past relevant work. (Tr. at 23, Finding No. 6). Therefore, the ALJ reviewed Claimant's past work experience, age, and education in combination with his RFC to determine his ability

to engage in other substantial gainful activity. (Tr. at 23-24, Findings 7 through 10). The ALJ considered that (1) Claimant was born in 1967 and was defined as an individual closely approaching advanced age on his alleged disability onset date; (2) Claimant had at least a high school education and could communicate in English; and (3) transferability of job skills was not an issue because the Medical-Vocational Rules supported a finding that Claimant was "not disabled" regardless of whether he had transferable job skills. (Tr. at 23-24, Findings 7 through 9). Taking into account these factors, Claimant's RFC, and the testimony of a vocational expert ("VE"), the ALJ determined that Claimant could perform other jobs that existed in significant numbers in the national economy, including the positions of routing clerk, price marker, and office cleaner. (Tr. at 24, Finding No. 10). Consequently, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 25, Finding No. 11).

## IV.    **Claimant's Challenges to the Commissioner's Decision**

Claimant asserts two challenges to the Commissioner's decision, both of which concern the ALJ's step three analysis. First, Claimant argues that the ALJ failed to develop the record regarding his multiple impairments in order for Claimant to satisfy the Listing criteria. (ECF No. 21 at 9). Second, Claimant contends that the ALJ failed to properly evaluate whether his combination of impairments satisfied the Listing. (*Id.* at 11).

In response to Claimant's challenges, the Commissioner argues that Claimant did not prove that he was disabled under the stringent standards of the Social Security Act, and he presented no evidence that he met a listing. (ECF No. 22 at 5-11). The Commissioner asserts that Claimant's challenges are conclusory and undeveloped, and they should be deemed waived. (*Id.* at 8, 10-11).

## V.    Relevant Evidence

The undersigned has reviewed all of the evidence before the Court. The information that is most pertinent to Claimant's challenges, particularly the evidence cited by the parties, is summarized as follows:

### A. Treatment Records

On January 11, 2017, Claimant underwent a sleep study and was diagnosed with mild obstructive sleep apnea. (Tr. at 1026). He followed up with pulmonologist Mohamad Abul-Khoudoud, M.D, on January 23, 2017, regarding lung nodules and his complaint of shortness of breath on exertion. (Tr. at 978). Dr. Abul-Khoudoud noted that Claimant smoked a pack of cigarettes per day and had a 30-year history of smoking. (Tr. at 979). Claimant's cardiovascular and pulmonary findings were normal, but Dr. Abul-Khoudoud diagnosed Claimant with coalminer's pneumoconiosis based on his recent chest x-ray. (Tr. at 978, 981). Dr. Abul-Khoudoud ordered a chest CT scan and pulmonary function study. (Tr. at 981).

Claimant presented to his family medicine physician, James Endicott, M.D., for regular follow up on February 20, 2017. His diagnosed conditions included obstructive sleep apnea, COPD, hyperlipidemia, depressive disorder, and anxiety. (Tr. at 1005-06). Dr. Endicott ordered blood work and prescribed Lipitor and Buspar. (Tr. at 1006). On March 17, 2017, Claimant's pulmonary function study indicated mild obstructive airways disease and mild diffusion defect. (Tr. at 933). There were no acute findings or suspicious lung nodularity in Claimant's CT scan. (Tr. at 936).

On May 16, 2017, Claimant had a myocardial perfusion (MPI) test to evaluate his complaints of shortness of breath. (Tr. at 927). The test showed ischemia and an ejection fraction of 50 percent. (*Id.*). Claimant followed up with cardiologist Mark Studeny, M.D.,

on June 29, 2017. Dr. Studeny prescribed medications for Claimant's chest pain and shortness of breath. (Tr. at 917-18). However, Claimant was referred for triple bypass the following day based on his left heart catheterization, selective coronary angiography, and left ventriculogram, which showed three-vessel coronary artery disease with occlusion. (Tr. at 1067). Claimant underwent the three vessel coronary artery bypass grafting (CABG) surgery on July 18, 2017. (Tr. at 473, 494). On July 25, 2017, Claimant returned to the hospital complaining of abdominal pain, nausea, bloating, and lack of appetite. (Tr. at 975). Surgeon David A. Denning, M.D., performed an exploratory laparotomy, which suggested ischemic bowel. (*Id.*). Dr. Denning infused papaverine to dilate Claimant's superior mesenteric artery and performed another laparotomy on July 27, 2017, to evaluate whether the treatment was effective. (Tr. at 975, 973). Dr. Denning concluded that Claimant's bowel was viable and much improved, and he determined that bowel resection surgery was not necessary. (Tr. at 974).

On August 27, 2017, Claimant presented to the emergency room at St. Mary's Medical Center complaining of syncope. (Tr. at 494). He was admitted for overnight monitoring and examined by cardiologists the following day. (Tr. at 473, 497). Claimant denied chest pain and his cardiovascular examination was normal. (Tr. at 473, 474). He was diagnosed with vasovagal syncope[1] and light-headedness. (Tr. at 475). Claimant followed up with Dr. Abul-Khoudoud on September 26, 2017, and his cardiovascular, pulmonary, abdominal, and neurological findings were all normal. (Tr. at 988). Claimant stated that he quit smoking and his breathing was better. (Tr. at 986, 989). Dr. Abul-

---

[1] "Vasovagal syncope is a condition that leads to fainting in some people. It is also called neurocardiogenic syncope or reflex syncope. It's the most common cause of fainting. It's usually not harmful nor a sign of a more serious problem." www.cedars-sinai.org/health-library/diseases-and-conditions/v/vasovagal-syncope.html

Khoudoud continued Claimant's existing treatment plan. (Tr. at 989).

Claimant presented to Dr. Endicott for a routine check-up on December 4, 2017. (Tr. at 1011). He mentioned that there was a possible retained surgical sponge in his abdomen, but he saw a surgeon for a second opinion, who recommended to "leave it alone." (Tr. at 1013). Claimant complained that his hearing was limited, he could only abduct his shoulders to 90 degrees, and he had decreased breath sounds and hyperresonance, but his lungs were clear, he ambulated normally and showed good judgment, and his cardiovascular findings were normal. (Tr. at 1013-14). Claimant followed up with Dr. Studeny on January 4, 2018, regarding coronary artery disease and hypertension. (Tr. at 1953). He denied chest pain and shortness of breath, but he reported limited left arm function due to rotator cuff surgery. (*Id.*). Dr. Studeny did not find any abnormalities in Claimant's physical examination. (Tr. at 1956). He scheduled Claimant to follow up in six months. (*Id.*).

On February 7, 2018, Claimant underwent an initial physical therapy evaluation due to increased left shoulder pain over the past seven months. (Tr. at 2075). He had positive signs of impingement and gross weakness in his shoulder that were consistent with a sprain/strain of his rotator cuff. (Tr. at 2076). Claimant's physical therapist recorded on March 12, 2018, that Claimant continued to make gains in functional mobility of his left shoulder. (Tr. at 2088).

The following month, on April 24, 2018, Claimant was examined by Jordan Adkins, APRN, FNP-BC, at Prestera Center. He reported that his mood was "pretty good," but he had panic attacks all of the time and suicidal ideation without a plan. (Tr. at 1776). Nurse Adkins noted that Claimant reported hallucinations and displayed dysphoric affect, but his speech, motor behavior, and memory were within normal limits, and he demonstrated

10

logical thought process, steady ambulation, focused attention/concentration, and orientation in all spheres. (Tr. at 1776-77). Nurse Adkins diagnosed Claimant with depressive schizoaffective disorder and unspecified anxiety disorder. (Tr. at 1777). She prescribed Buspar and Zoloft. (Tr. at 1778).

Claimant presented for another physical therapy evaluation on May 8, 2018, due to his complaints of chronic neck pain that progressively worsened over the past year, as well as upper extremity radiculopathy. (Tr. at 2089). He was scheduled for four weeks of physical therapy at the frequency of three times per week. (Tr. at 2090). On May 16, 2017, Claimant underwent another MPI stress test after experiencing two sharp atypical episodes of chest pain. (Tr. at 1975). The test showed a large moderate intensity inferior wall reversibility consistent with ischemia. (*Id.*).

Claimant reported "some" chest pain when he followed up with Dr. Studeny on July 5, 2018. (Tr. at 1946). Dr. Studeny diagnosed Claimant with hypertension, coronary artery disease of bypass graft, and angina pectoris. (Tr. at 1949). He prescribed medications and ordered further testing. (*Id.*). During his subsequent visit with Dr. Studeny on August 13, 2018, Claimant denied chest pain and Dr. Studeny noted that Claimant completed the ECG stress test without symptoms, his MPI study showed only mild ischemia, and his echocardiogram was normal. (Tr. at 1975, 1978); *see* (Tr. at 2026). Dr. Studeny recommended exercise and medical management. (*Id.*). A few days later, on August 16, 2018, Claimant told his physical therapist that he was able to go into the hills and pick berries without any increased pain or problems. (Tr. at 2114).

On August 23, 2018, Claimant reported to his physical therapist that his physician told him to do as many activities as he could, but he felt weak while he was mowing the lawn a couple of days earlier, so he had to "back off" for a few days. (Tr. at 2117). Claimant

did not have any other new concerns. (*Id.*). He completed his course of physical therapy, reporting 50 percent improvement in neck pain and improvement in range of motion of his neck. (Tr. at 2118). Claimant denied chest pain and shortness of breath during his appointment with Dr. Studeny on January 14, 2019. (Tr. at 1985). Dr. Endicott recorded on March 4, 2019, that Claimant had limited hearing, decreased breath sounds and hyperresonance, diminished radial pulses, incisional hernia, reduced right grip strength of 4/5, and right finger locks, yet he displayed good judgment, his lungs were clear, and he ambulated normally with full motor strength, intact sensation and reflexes, and no decreased range of motion other than in his hips. (Tr. at 1995-96). Dr. Endicott prescribed Zyrtec for allergies and advised Claimant to wear a compression wrap on his abdomen. (Tr. at 2001). He noted that he would find out if insurance would cover voltaren gel if the hernia did not improve in two weeks. (*Id.*). Dr. Endicott noted the same examination findings during Claimant's regular check-up on July 3, 2019. (Tr. at 2130-31). Dr. Endicott ordered blood tests and referred Claimant to physical therapy for twelve visits to treat Claimant's alleged back pain. (Tr. at 2131).

### B. Evaluations, Opinions, and Prior Administrative Findings

On January 7, 2018, Dr. Endicott completed a medical source statement concerning Claimant's ability to do work-related activities. He assessed that Claimant could frequently lift up to 10 pounds, occasionally lift 11 to 20 pounds, and never lift 21 pounds or more or lift above shoulder level with his left arm. (Tr. at 1577). Dr. Endicott further opined that Claimant could occasionally carry up to 10 pounds, rarely carry 11 to 20 pounds, and never carry 21 pounds or more. (*Id.*). He estimated that Claimant could sit for 30 minutes, stand for 15 minutes, and walk for 15 minutes at one time for a total of four to five hours of sitting, one to two hours of standing, and one to two hours of walking

per day. (Tr. at 1578). Dr. Endicott noted that his foregoing findings were based on Claimant's coronary artery disease, ischemic bowel, frozen left shoulder, black lung, and COPD. (*Id.*). He further opined that Claimant could frequently feel bilaterally; occasionally reach, handle, and finger bilaterally; never reach overhead with his left hand or push/pull bilaterally; occasionally operate foot controls with his right foot, but never operate foot controls with his left foot; and never climb ladders or scaffolds, balance, crawl, or be exposed to unprotected heights, humidity or wetness, dusts, odors, fumes, pulmonary irritants, extreme temperatures, or vibration. (Tr. at 1579-81). Dr. Endicott stated that Claimant was totally disabled from any occupation due to his "serious medical conditions." (Tr. at 1582).

Psychologist Laura Bickett, Ph.D., evaluated Claimant on April 9, 2018. She found that Claimant displayed anxious mood, constricted affect, and impaired memory and concentration. (Tr. at 1768-69). Dr. Bickett diagnosed Claimant with major depressive disorder, generalized anxiety disorder, and social anxiety disorder. (Tr. at 1772-73). She recommended therapy. (Tr. at 1773).

On May 24, 2018, state agency physician Narendra Parikshak, M.D., assessed Claimant's physical RFC based upon her review of Claimant's records. She concluded that Claimant could perform light work with postural, manipulative, and environmental limitations, and his impairments did not satisfy listings 4.02, 3.02, or 4.11. (Tr. at 145, 148-49). On May 25, 2018, state agency psychologist Debra Lilly, Ph.D., performed a psychiatric review technique and assessed Claimant's mental RFC based upon her review of Claimant's records. (Tr. at 144-45, 149-51). Dr. Lilly found that Claimant could perform simple, routine, repetitive tasks involving no interaction with the public, production rates, or strict time limits. (Tr. at 151). John Todd, Ph.D., affirmed Dr. Lilly's findings on August

7, 2018, and Rabah Boukhemis, M.D., affirmed Dr. Parikshak's findings on August 8, 2018. (Tr. at 165-66, 168-72).

Nurse Adkins completed a mental RFC form on June 6, 2018. She opined that Claimant had marked limitations in all areas of mental functioning. (Tr. at 1933-34). She wrote a letter on July 24, 2019, stating that Claimant was mentally incapable of working because he could not interact with others. (Tr. at 2140). She noted that he reportedly suffered "crippling anxiety," panic attacks, depression, and auditory and visual hallucinations. (*Id.*). Nurse Adkins further opined that Claimant had difficulty remembering and following through with simple and complex directions, and his poor focus and inattention to detail increased his safety risk on the job. (*Id.*).

## VI.   <u>Standard of Review</u>

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This Court is not charged with conducting a *de novo* review of the evidence. Instead, the Court's function is to scrutinize the record and determine whether it is adequate to support the conclusion of the Commissioner. *Hays*, 907 F.2d at 1456. When conducting this review, the Court does not re-weigh evidence, make credibility determinations, or

substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001) (citing *Hays*, 907 F.2d at 1456)). Moreover, "[t]he fact that the record as a whole might support an inconsistent conclusion is immaterial, for the language of § 205(g) … requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" *Blalock*, 483 F.2d at 775 (citations omitted). Thus, the relevant question for the Court is "not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig*, 76 F.3d at 589).

## VII.    Discussion

Claimant argues that the ALJ failed to develop the record or consider his combination of impairments at step three of the sequential evaluation. Each argument is considered below, in turn.

### A.  Duty to Develop the Record

Claimant contends that if the ALJ had properly developed the record "it would be evident that the multiple impairments that [Claimant] is suffering from would have been more than enough to satisfy the impairment requirement" under the Listing. (ECF No. 21 at 9). He specifies that the ALJ failed to develop evidence regarding the following conditions: degenerative joint disease and torn rotator cuff in his left shoulder, COPD, coronary artery disease, hearing loss, sleep apnea, back and neck pain, pancreatitis, hernia, carpal tunnel syndrome, tendinitis, irritable bowel syndrome, Raynaud's Syndrome, trigger finger, depressive disorder, schizoaffective disorder, generalized anxiety disorder, and schizophrenia. (*Id.*).

An "ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ "cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Id.* However, an ALJ's duty to develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Perry v. Astrue*, No. 3:10-CV-01248, 2011 WL 5006505, at *16 (S.D.W. Va. Oct. 20, 2011) (quoting *Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir.2001)); *Fuller v. Saul*, No. 3:19-CV-00174, 2020 WL 597596, at *5 (S.D.W. Va. Jan. 13, 2020), *report and recommendation adopted,* 2020 WL 597425 (S.D.W. Va. Feb. 6, 2020); *Savage v. Saul*, No. 3:20-CV-00482, 2021 WL 2168909, at *8 (S.D.W. Va. May 7, 2021), *report and recommendation adopted,* 2021 WL 2169514 (S.D.W. Va. May 27, 2021); *Lewanda Terriel S. v. Saul*, No. CV TMD 19-1146, 2020 WL 2794588, at *4 (D. Md. May 29, 2020).

The ALJ's duty is to ensure that the record contains sufficient evidence upon which the ALJ can make an informed decision. *Ingram v. Commissioner of Social Security Administration,* 496 F.3d 1253, 1269 (11th Cir. 2007); *Weise v. Astrue,* No. 1:08-cv-00271, 2009 WL 3248086 (S.D.W. Va. Sept. 30, 2009); *Jones v. Saul*, No. 1:19-cv-275-GCM, 2020 WL 2411635, at *3 (W.D.N.C. May 12, 2020). Consequently, when examining the record to determine if it was adequate to support a reasoned administrative decision, the Court looks for evidentiary gaps that resulted in "unfairness or clear prejudice" to Claimant. *Marsh v. Harris,* 632 F.2d 296, 300 (4th Cir. 1980).

Ultimately, the claimant must establish a prima facie entitlement to benefits, and he or she consequently bears the risk of nonpersuasion. *Bell v. Chater*, 1995 WL 347142, at *4 (4th Cir. June 9, 1995) (citing *Seacrist v. Weinberger,* 538 F.2d 1054, 1057 (4th Cir.

1976) and 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.")). Thus, the ALJ is not required to act as a claimant's counsel and can presume that the claimant's counsel presented the strongest case for benefits. *Bell v*, 1995 WL 347142, at *4; *Perry*, 2011 WL 5006505, at *15. The ALJ's duty to develop the record does not permit a claimant, through counsel, to rest on the record and later fault the ALJ for not performing a more exhaustive investigation. *Perry*, 2011 WL 5006505, at *15 (citations and markings omitted).

In this case, Claimant argues that the ALJ should have developed the record at step three of the sequential analysis. A claimant should be found disabled at the third step of the sequential evaluation process when his or her impairments meet or medically equal an impairment included in the Listing. The Listing describes for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity. *See* 20 C.F.R. §§ 404.1525, 416.925. The Listing is intended to identify those individuals whose mental or physical impairments are so severe that they would likely be found disabled regardless of their vocational background; consequently, the criteria defining the listed impairments is set at a higher level of severity than that required to meet the statutory definition of disability. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Because disability is presumed with a listed impairment, "[f]or a claimant to show that his impairment matches a [listed impairment], it must meet all of the specified medical criteria." *Id.* at 530. If the claimant is unable to demonstrate that his impairments, alone or in combination, match the criteria of a particular listed impairment, the claimant may still establish disability by showing that his impairments are medically equivalent to the listed impairment.

17

To establish medical equivalency, a claimant must present evidence that his impairment, unlisted impairment, or combination of impairments, is equal in severity and duration to all of the criteria of a specific listed impairment. *Id.* at 530; *see also* 20 C.F.R. §§ 404.1526, 416.926. In Title 20 C.F.R. §§ 404.1526, 416.926, the SSA sets out three ways in which medical equivalency can be determined. First, if the claimant has an impairment that is described in the Listing, but (1) does not exhibit all of the findings specified in the listing, or (2) exhibits all of the findings, but does not meet the severity level outlined for each and every finding, equivalency can be established if the claimant has other findings related to the impairment that are at least of equal medical significance to the required criteria. *Id.* §§ 404.1526(b)(1), 416.926(b)(1). Second, if the claimant's impairment is not described in the Listing, equivalency can be established by showing that the findings related to the claimant's impairment are at least of equal medical significance to those of a closely analogous listed impairment. *Id.* §§ 404.1526(b)(2), 416.926(b)(2). Finally, if the claimant has a combination of impairments, no one of which meets a listing, equivalency can be proven by comparing the claimant's findings to the most closely analogous listings; if the findings are of at least equal medical significance to the criteria contained in any one of the listings, then the combination of impairments will be considered equivalent to the most similar listing. *Id.* §§ 404.1526(b)(3), 416.926(b)(3).

"For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment ... A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan,* 493 U.S. at 531. The

18

claimant bears the burden of production and proof at this step of the disability determination process. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

In this matter, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments in the Listing. (Tr. at 18). The ALJ specifically considered listing 1.02B (major dysfunction of a joint), 3.02 (chronic respiratory disorders), 4.04C (ischemic heart disease), 12.04 (depressive, bipolar, and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). (Tr. at 19-20). Claimant does not challenge the ALJ's analysis of the foregoing listings, contend that the ALJ should have considered additional listings, or even argue that any of his impairments satisfy a listing under the current record. Rather, Claimant presents the vague argument that his "multiple severe impairments" would satisfy some unidentified portion of the Listing if the ALJ had properly developed the evidence.

The undersigned agrees with the Commissioner's assertion that Claimant effectively waived his challenges by raising them only in a conclusory fashion. (ECF No. 22 at 8); *see Nelson v. Saul*, No. 3:20-CV-00586, 2021 WL 1603812, at *8 n.3 (S.D.W. Va. Apr. 7, 2021), *report and recommendation adopted*, 2021 WL 1601747 (S.D.W. Va. Apr. 23, 2021). Indeed, the Court should not be tasked with researching and constructing a claimant's arguments for him. Claimant fails to identify any errors in the ALJ's decision with specificity.

Notwithstanding the issue of waiver, Claimant's argument that the ALJ failed to develop the record at step three of the sequential evaluation is unavailing. The comprehensive 2141-page record includes, *inter alia*, Claimant's medical records, hearing testimony, function reports, medical source statements, evaluations, and prior

administrative findings. Claimant does not articulate any further inquiries that the ALJ should have made or specify what further evidence was necessary for the ALJ to render a decision on his disability applications. Claimant lists pieces of medical evidence in his brief, yet he does not explain how any of it prompted further investigation. (ECF No. 21 at 4-6). For instance, Claimant notes that his treating providers, Dr. Endicott and Nurse Adkins, rendered opinions regarding his RFC and inability to work. (*Id.* at 9-10). However, Claimant does not identify any inadequacies in Dr. Endicott and Nurse Adkins's opinions or clinical records that required further development.

Moreover, Claimant confirmed, by counsel, at his administrative hearing that the record was complete. (Tr. at 36-37). The ALJ explicitly asked Claimant's counsel if he reviewed the record with Claimant, and counsel answered affirmatively. (Tr. at 36). Counsel stated that Claimant did not have any objections to the exhibits in the file and he did not know of any additional evidence that needed to be submitted. (Tr. at 36-37). Claimant very clearly had the opportunity to raise any issues concerning development of the record.

In sum, Claimant does not identify any specific listing that his impairments could satisfy, evidence that the ALJ should have developed, or inadequacies in the record. The undersigned **FINDS** that the record was sufficiently developed for the ALJ to make an informed decision on Claimant's applications for benefits.

### B. Combination of Impairments

Claimant next argues that the ALJ failed to evaluate his claim "under the combination of impairments theory which altogether establishes disability under [the Listing]." (ECF No. 21 at 11). An ALJ must consider the combined, synergistic effect of all of a claimant's medically determinable impairments, severe and non-severe, to accurately

evaluate the extent of their resulting limitations on the claimant. *Walker v. Bowen,* 889

F.2d 47 (4th Cir. 1989). The relevant regulations provide:

> In determining whether your physical or mental impairment or
> impairments are of a sufficient medical severity that such impairment or
> impairments could be the basis of eligibility under the law, we will consider
> the combined effect of all of your impairments without regard to whether
> any such impairment, if considered separately, would be of sufficient
> severity.

20 C.F.R. §§ 404.1523, 416.923. Where there is a combination of impairments, the issue

"is not only the existence of the problems, but also the degree of their severity, and

whether, together, they impaired the claimant's ability to engage in substantial gainful

activity." *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should

not be fractionalized and considered in isolation but considered in combination to

determine the impact on the ability of the claimant to engage in substantial gainful

activity. *Id.* The cumulative or synergistic effect that the various impairments have on

claimant's ability to work must be analyzed. *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th

Cir. 1983). As the Fourth Circuit stated in *Walker,* "[i]t is axiomatic that disability may

result from a number of impairments which, taken separately, might not be disabling, but

whose total effect, taken together, is to render claimant unable to engage in substantial

gainful activity." *Walker,* 889 F.2d at 50.

In this case, Claimant listed the same 19 impairments that he referenced in his first

challenge and abruptly concluded that "it is obvious" that he "meets the listing for

disability." (ECF No. 21 at 11-12). Claimant does not identify any listing that his

combination of impairments purportedly meets or medically equals, nor does he cite any

specific medical evidence in support of this claim. Claimant tangentially mentions that

the ALJ "failed in her duty to consider the medical records of longtime treating

physicians" and "substituted her own opinion" for the opinions of Claimant's physicians. (ECF No. 21 at 12).

The revised regulations concerning opinion evidence apply to Claimant's applications filed in April 2018. Therefore, the ALJ was not required to assign specific weight to any evidence, but she was required to evaluate the persuasiveness of medical opinions, which are defined as:

> [A] statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. §§ 404.1513(a)(2), 404.1520c, 416.913(a)(2), 416.920c.

Claimant does not specify which medical records or opinions the ALJ failed to consider. In his recitation of the medical evidence, Claimant referenced Dr. Endicott's September and October 2016 opinions that Claimant was disabled, Dr. Endicott's January 2018 RFC opinion, and Nurse Adkins's mental RFC opinion. (ECF No. 21 at 5-6). However, Claimant does not connect any such evidence to his argument that his combination of impairments satisfies the Listing. The undersigned notes that the ALJ expressly considered Nurse Adkins's assessment of Claimant's mental RFC and statement that Claimant was disabled. (Tr. at 23). Claimant does not indicate how Dr. Endicott's September and October 2016 opinions were relevant to whether Claimant met a listing for the period beginning on February 14, 2018. Furthermore, although the ALJ did not

articulate specific consideration of Dr. Endicott's January 2018 opinion, Claimant fails to show that it prejudiced the step three finding. Dr. Endicott did not express any opinion that Claimant's impairments, alone or in combination, satisfied the listing. Rather, Dr. Endicott assessed Claimant's RFC and opined that Claimant was disabled. (Tr. at 1577-82). Claimant fails to establish the applicability of Dr. Endicott's opinions to his challenge that his combination of impairments satisfied the Listing.

The ALJ articulated, with specific citations to the record, her findings that Claimant's impairments did not satisfy the Listing criteria. (Tr. at 18-20). Claimant does not adduce any evidence or argument to dispute her analysis. The decision documents the ALJ's well-supported rationale for finding that Claimant's impairments, alone or in combination, did not preclude him from engaging in substantial gainful activity. (*Id.*). To the extent that the ALJ did not elaborate further on the analysis of Claimant's impairments in combination, the undersigned finds further elaboration was unnecessary because the required analysis clearly took place. Therefore, the undersigned **FINDS** that the ALJ complied with her duty under the applicable law to consider Claimant's impairments in combination at step three of the sequential evaluation.

## VIII.  Recommendations for Disposition

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 20); **GRANT** the Commissioner's request for judgment on the pleadings, (ECF No. 22); **AFFIRM** the decision of the Commissioner; **DISMISS** this action, with prejudice, and remove it from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is

hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Thomas v. Arn*, 474 U.S. 140 (1985); *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED**: July 28, 2021

Cheryl A. Eifert
United States Magistrate Judge

24